IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **SABRINA CAVERS,** | * |
| | * |
| **Plaintiff,** | * |
| | *   **Civil No. TMD 13-632** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| **Defendant.** | * |
| | *********** |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Sabrina Cavers ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and Alternative Motion for Remand (ECF No. 9) and Defendant's Motion for Summary Judgment (ECF No. 13).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 9) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1968, has a high-school education, and previously worked as a mail room supervisor, rural mail carrier, loan officer, telemarketer, day care worker, and child attendant. R. at 90-91, 94, 96-103, 196, 385, 496-97. Plaintiff applied protectively for DIB and SSI on July 13, 2004, alleging disability beginning on April 9, 2003, due to depression and a back injury. R. at 58-60, 89, 283. The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 34-42, 44.

An ALJ held a hearing on November 15, 2006 (R. at 340-54), and issued an unfavorable decision on December 10, 2006 (R. at 280-94). The Appeals Council vacated the decision and remanded the case to the ALJ on December 27, 2007. R. at 295-99. The ALJ held another hearing on May 8, 2008 (R. at 329-39), and issued an unfavorable decision on July 14, 2008 (R. at 13-24). The Appeals Council denied Plaintiff's request for review on March 19, 2010. R. at 6-8, 11-12. Plaintiff sought judicial review in this Court. *Cavers v. Astrue*, Civil Action No. JKS-10-1205 (D. Md. filed May 14, 2010). The Commissioner consented to a remand, and the Court remanded the case on August 24, 2011.

The Appeals Council vacated the ALJ's decision and remanded the case to a different ALJ on October 21, 2011. R. at 388-91. ALJ Thomas Ray held a hearing on June 19, 2012, but Plaintiff did not appear, so the ALJ continued the hearing. R. at 485-89. The ALJ held another hearing in Washington, D.C., on September 20, 2012, at which a vocational expert ("VE") testified, but Plaintiff again did not appear, although her counsel was present. R. at 490-504. On October 31, 2012, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset

date of disability of April 9, 2003.  R. at 375-87.  Plaintiff ultimately withdrew her request for review of this decision by the Appeals Council.  R. at 356-61, 367-71.  The ALJ's decision thus became the final decision of the Commissioner after remand.  *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

On February 28, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     State Agency Medical Consultants**

On January 21, 2005, Dale Peterson, Ph.D., evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listing 12.04 relating to affective disorders.  R. at 204-17.  Dr. Peterson opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 214.  Dr. Peterson did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04.  R. at 215.  Accordingly, Dr. Peterson assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 218-21) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; and (3) complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff otherwise was not significantly limited. R. at 218-19.

On September 22, 2005, another state agency consultant, Shawn Hales, Psy.D., opined on a PRTF that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 248. Because Dr. Hales also did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04 (R. at 249), Dr. Hales assessed Plaintiff's mental RFC (R. at 252-55) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) set realistic goals or make plans independently of others. Plaintiff otherwise was not significantly limited. R. at 252-53.

Dr. Hales's mental RFC assessment thus stated: "Ratings show mild to moderate limitations in areas dealing with continuity of performance and social interactions." R. at 254.

> Residual capacity finds that [Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental standpoint. [Plaintiff] is capable of completing daily living functions within the constraints of mental and cognitive status. This individual manages within a basic


routine. A/C fluctuates at times due to the effects of the conditions. [Plaintiff] appears to have the ability to interact and relate with others socially. [Plaintiff] can adequately negotiate in the general community.

Overall, any limitations in [Plaintiff's] residual capacity would compromise performance on more detailed, complex work, and job-related tasks in a highly social context.

R. at 254.

On January 25, 2005, a state agency medical consultant assessed Plaintiff's physical RFC. R. at 223-30. The consultant opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 224. Plaintiff occasionally could climb and stoop and frequently could balance, kneel, crouch, and crawl. R. at 225. Plaintiff had no manipulative, visual, communicative, or environmental limitations, however. R. at 226-27. On September 30, 2005, another state agency medical consultant, James Biddison, M.D., reached the same opinion regarding Plaintiff's exertional, manipulative, visual, communicative, and environmental limitations, but further opined that Plaintiff had no postural limitations. R. at 257-64.

**B.    VE Testimony**

According to the VE, Plaintiff's past work as a mail room supervisor is skilled and medium[2] as she performed it, her past work as a rural mail carrier is semi-skilled and medium, her past work as a loan officer is skilled and sedentary,[3] her past work as a telemarketer is semi-

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

skilled and sedentary, her past work as a day care worker is semi-skilled and light,[4] and her past work as a counselor or child attendant is semi-skilled and heavy[5] as she performed it. R. at 496-97. Further, a hypothetical person of Plaintiff's same age, education, and work experience could not perform any of her past work as generally and actually performed if that person required a thirty-minute sit/stand option; occasionally could balance, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds); frequently could stoop, kneel, and crouch; could understand, remember, and carry out simple, routine tasks; and occasionally could interact with co-workers, but never with the general public. R. at 498. Unskilled jobs that such a person could perform included final inspector, final assembler, and sorter. R. at 499-500. No work would be available to someone who would be non-productive 20% of the time in an eight-hour workday, however. R. at 500. Moreover, no work would be available to a person who would need to miss four days of work on an unscheduled basis. R. at 501.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below. *See infra* Part VI.

### III

### <u>Summary of ALJ's Decision</u>

On October 31, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of April 9, 2003; and (2) had an

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

6

impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a final inspector, final assembler, or "porter [sic]." R. at 381-86. The ALJ accordingly found that she was not disabled from April 9, 2003, through the date of the decision. R. at 387.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] needs a sit/stand option sitting for 30 minutes before standing for 30 minutes. [Plaintiff] may climb ramps and stairs occasionally, but never ladders, ropes, and scaffolds. [Plaintiff] may occasionally balance. [Plaintiff] can frequently stoop, kneel, crouch, but occasionally crawl. [Plaintiff] is able to understand, remember, and carry out simple, routine instructions. [Plaintiff] can have occasional interactions with co-workers, but no interaction with the general public.

R. at 382-83. The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 383. The ALJ also weighed the opinion evidence in the record, giving "some probative weight" to Dr. Biddison's opinion and "significant probative weight" to Dr. Hales's opinion. R. at 385.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

A.   **Plaintiff's Waiver of Right to Appear at Hearing**

Relying on the Hearings, Appeals and Litigation Law Manual ("HALLEX"), Plaintiff first contends that the ALJ erred in determining that she had waived her appearance at the hearing on September 20, 2012 (R. at 378). Pl.'s Mem. Supp. Mot. Summ. J. 4-6, ECF No. 9-1. She maintains that the ALJ's failure under HALLEX to issue a Request to Show Cause for Failure to Appear when she failed to appear at the September 2012 hearing was erroneous as a matter of law. The Court disagrees.

HALLEX is "a policy manual written by the Social Security Administration to provide policy and procedural guidelines to ALJs and other staff members." *Laur v. Astrue*, Civil Action

No. TMD 08-112, 2010 WL 481318, at *2 (D. Md. Feb. 4, 2010).  Because HALLEX does not have the force and effect of law, it is not binding on the Commissioner.  *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *see Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S. Ct. 1468, 1471 (1981) (per curiam); *Laur*, 2010 WL 481318, at *2.  Although circuits are split over whether HALLEX creates enforceable rights, "no circuit has held that the HALLEX creates *constitutional* rights because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights."  *Davenport v. Astrue*, 417 F. App'x 544, 547-48 (7th Cir. 2011).  Accordingly, the Court does not review allegations of noncompliance with the manual.  *Moore*, 216 F.3d at 869; *see Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009).

Plaintiff further asserts that the Commissioner failed to follow the contact procedure under 20 C.F.R. § 404.938 because the record neither reflects that Plaintiff acknowledged receipt of her notice of hearing nor indicates that an attempt was made to contact Plaintiff for an explanation.  Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 9-1.  Plaintiff's counsel appeared at the September 2012 hearing, however, and stated that he had written to Plaintiff without a response.  R. at 494.  Further, the record reflects that Plaintiff's counsel was not able to locate her, contrary to her assertion.  R. at 492.  Moreover, the ALJ issued a notice to show cause for failure to appear after Plaintiff did not appear at the June 2012 hearing.  R. at 492.  Plaintiff's contention regarding the Commissioner's lack of compliance with the contact procedure in the regulations thus is unavailing.  In short, substantial evidence supports the ALJ's finding that Plaintiff waived her right to a hearing.

**B.	The ALJ's RFC Assessment**

Plaintiff next maintains that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[7] ("SSR") 96-8p.  Pl.'s Mem. Supp. Mot. Summ. J. 7-16, ECF No. 9-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Among Plaintiff's various arguments is her contention that the ALJ failed to evaluate pertinent evidence, including (1) the state agency consultants' opinions in their mental RFC assessments regarding her moderate functional limitations and (2) the findings of Dr. Heshmat Majlessi, a neurologist, who examined her once in May 2012.  *Id.* at 11-13.

Plaintiff contends that the ALJ failed to include the moderate functional limitations found by Drs. Peterson and Hales as stated in the "summary conclusions" section in Section I of their respective mental RFC assessments (R. at 218-19, 252-53), despite affording "significant probative weight" to Dr. Hales's opinion in the "functional capacity assessment" section in Section III that "any limitations in [Plaintiff's RFC] would compromise performance on more detailed, complex work, and job-related tasks in a highly social context" (R. at 254, 385).  As the Commissioner points out, "the relevant portion of the [consultants'] opinions is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment."  *Blum v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1833, 2013 WL 2902682, at *2 (D. Md. June 11, 2013).  "Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

Section I limitations." *Id.* The ALJ further found that Dr. Hales's opinion in Section III was consistent with a consultative examiner's assessment regarding Plaintiff's ability to perform simple tasks. R. at 201, 237, 385. Plaintiff's argument in this regard thus is unavailing.

Plaintiff contends, however, that the ALJ failed to evaluate properly the May 2012 opinions and findings of Dr. Majlessi (R. at 384, 430-432). Pl.'s Mem. Supp. Mot. Summ. J. 12-13, ECF No. 9-1. The ALJ stated only in his decision that "Dr. Majlessi noted that [Plaintiff] was unable to do an accurate examination due to [her] avoidance of using the right leg to perform any activity." R. at 384. Plaintiff maintains that the ALJ erred in failing to evaluate Dr. Majlessi's findings regarding her memory problems, which included failing to recall the day, date, or the President's name. R. at 431-32.

The Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." *Id.* The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotation marks omitted). The duty of explanation is satisfied "[i]f a reviewing court

can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999).

Here, the Court cannot say that the ALJ's error in failing to discuss and weigh Dr. Majlessli's findings regarding Plaintiff's memory deficits was harmless. The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). In other words, "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (reviewing court must judge propriety of agency action solely by grounds invoked by agency). "[T]he fact that the [ALJ], had [he] considered the entire record, might have reached the same result does not prove that [his] failure to consider the evidence was harmless. Had [he] considered it carefully, [he] might well have reached a different conclusion." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.). As noted above, an ALJ must explain on the record the weight given to all of the relevant evidence and the reason for rejecting such evidence in support of the claim. Accordingly, the Court **REMANDS** this case to the Commissioner for further proceedings for her to do so. The Court need not consider the other issues raised by Plaintiff. *See Hardy v. Colvin*, Civil Action No. TMD 11-02793, 2013 WL 4478025, at *4 n.3 (D. Md. Aug. 19, 2013).

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**. Plaintiff's Alternative Motion for Remand (ECF No. 9) is **GRANTED**, and this matter is **REMANDED** for further proceedings. A separate order shall issue.

Date: September 17, 2014                                   /s/
                                                  Thomas M. DiGirolamo
                                                  United States Magistrate Judge